IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW L. DENNIS,

                Petitioner,

v.

LIZZIE TEGELS,

                Respondent.

OPINION AND ORDER

20-cv-593-jdp

---

       Matthew L. Dennis, appearing pro se, is an inmate at Jackson Correctional Institution. Dennis filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction in Walworth County Case No. 2012CF000312 for four counts of second-degree sexual assault of a child. The parties agree that the petition is untimely. The question before the court is whether it should excuse Dennis's default, either for equitable reasons or because Dennis is actually innocent.

       As explained in more detail below, I conclude that Dennis has not met his heavy burden to show that either exception applies to him. Accordingly, I will grant respondent's motion to dismiss the petition.

BACKGROUND

       The following background facts are drawn from the petition and its attachments. Dkt. 1. They are not in dispute.

A. **Trial proceedings**

       The state charged Dennis with five counts of second-degree sexual assault of a child. The assaults were alleged to have occurred on June 27 and 28, 2012, and were based on

disclosures made by the alleged victim, L., who was 13 at the time. She initially disclosed the assaults to her sisters, I. and A., on June 29, 2012. At the time, Dennis was living with a third sister, S. The Wisconsin Court of Appeals described the pertinent trial testimony in its decision on Dennis's direct appeal:

> The victim's older sister, I., testified that after the victim had a fight with Dennis on June 29, 2012, the victim revealed the assaults to her. I. and A. testified to what the victim told them about the assaults. They both testified about how the victim's demeanor changed on the day of each assault after the assault occurred. They also testified that Dennis made them feel uncomfortable because he would talk about his sex life and pornography. During her trial testimony the victim recanted her statement to police and testified that Dennis did not sexually assault her in any manner. She indicated that I. did not like Dennis and came up with a plan to get him arrested and told her what to say. The victim also denied any recollection of an instance where Dennis attempted to touch her when she was ten. An expert witness testified that delayed reporting is common and that a number of factors can cause a victim to recant. During the defense's case, the jury viewed two videos of interviews conducted June 30, 2012, one with the victim, I., and an officer, and the other a short follow-up interview with the victim alone.

*State v. Dennis*, 2014AP2538-CR, ¶5 (Wis. Ct. App. Nov. 5, 2015), Dkt. 16-1. Dennis's theory of defense was that "I. put the victim up to making false allegations" because I. did not like Dennis and disapproved of his relationship with their sister, S. *Id*.

The jury convicted Dennis of four counts and acquitted him on a fifth. The court sentenced him to concurrent terms on all counts of 14 years initial confinement followed by 14 years of extended supervision.

B. **Post-conviction proceedings**

Dennis was appointed new counsel, Aneeq Ahmad, to represent him in postconviction proceedings. In July 2013, Ahmad filed a motion for postconviction relief, alleging that

Dennis's trial counsel had been ineffective in various ways. The trial court held an evidentiary hearing at which trial counsel testified. The trial court denied the motion on October 10, 2014.

Dennis appealed, still represented by Ahmad. On November 5, 2015, the Wisconsin Court of Appeals affirmed the trial court's judgment of conviction and order denying Dennis's motion for postconviction relief, agreeing that Dennis had failed to prove his trial counsel was ineffective. Dennis did not petition the Wisconsin Supreme Court to review the decision.

On May 18, 2016, Dennis filed a pro se petition for a writ of habeas corpus with the Wisconsin Court of Appeals pursuant to *State v. Knight*, 168 Wis. 2d 509, 484 N.W. 2d 540 (1992). Dennis alleged that Ahmad had been ineffective for not raising additional challenges to trial counsel's performance and for failing to petition the Wisconsin Supreme Court to review the court of appeals' November 5, 2015, decision. On May 9, 2017, the Wisconsin Court of Appeals issued an order dismissing the writ on procedural grounds, explaining that Dennis had filed his challenges in the wrong court. Specifically, it found that his complaints about Ahmad's failure to raise certain grounds of ineffective assistance had to be brought in the trial court pursuant to *State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 679-81, 556 N.W. 2d 136 (Ct. App. 1996). And his complaint about Ahmad's failure to file a petition for review had to be filed in the Wisconsin Supreme Court pursuant to *State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 255–56, 548 N.W. 2d 45 (1996).

A little more than seven months later, on December 28, 2017, Dennis filed a collateral, postconviction motion in the trial court, alleging as he did in his *Knight* petition that Ahmad had been ineffective for failing to raise additional challenges to trial counsel's effectiveness. The trial court denied the motion summarily without an evidentiary hearing. It explained that Dennis's motion focused exclusively on trial counsel's performance without saying why the

3

new challenges he wanted to raise were clearly stronger than those raised by Ahmad during the initial postconviction proceedings. Dennis moved for reconsideration, but the trial court denied the motion, finding that Dennis's ineffective assistance allegations were "largely unsupported and conclusory" and lacked the detail necessary to show that Dennis would be entitled to relief if they were found to be true.

Dennis appealed. On October 23, 2019, the Wisconsin Court of Appeals affirmed both orders of the trial court. Dennis then filed a timely petition for review with the Wisconsin Supreme Court, which that court denied on March 17, 2020.

**C. Federal habeas petition**

Dennis filed this habeas corpus petition on June 15, 2020. Dennis alleged that he was in custody in violation of his Sixth Amendment right to the effective assistance of counsel because: (1) his trial counsel had failed to call witnesses or obtain expert testimony to bolster his defense about the victim recanting her statement to police, and had failed to call an expert to give an opinion about whether Dennis's character traits fit the profile of a sex offender; and (2) postconviction and appellate counsel had not challenged trial counsel's ineffectiveness on these issues. Dennis also said that he had new evidence supporting his defense regarding the victim's recantation and prosecutorial misconduct in pressuring the victim to maintain her original story.

Reviewing the petition initially, I concluded that Dennis's petition faced two major problems: (1) it appeared to be untimely; and (2) Dennis appeared to have procedurally defaulted his claims. Dkt. 6. In response to that order, Dennis supplemented his petition with additional facts that I concluded raised possible grounds for equitable tolling or a finding of actual innocence. Accordingly, I ordered the petition to be served on the respondent. Dkt. 11.

The respondent then moved for dismissal on grounds of untimeliness and procedural default. Dkt. 15. In response, Dennis stated that he did not have any more evidence to submit and that he was resting on his previous submissions to the court. Dkt. 19. The motion to dismiss the petition is the matter before the court.

ANALYSIS

**A. The petition is untimely**

As the court explained in previous orders, habeas petitioners proceeding under § 2254 generally have one year from the date on which their state court convictions become final in which to file a federal habeas petition, excluding time during which any "properly filed" postconviction motions are pending in state court. 28 U.S.C. §§ 2244(d)(1)(A), (d)(2). (There are other potential dates for the one-year period to start, *see* sect 2244(d)(1)(B)-(C), but Dennis hasn't argued that any of these should apply.) As demonstrated by the state's response, Dennis's conviction became final on December 5, 2015. His federal habeas clock began running on this date and ran continuously for the next two years until he filed his § 974.06 motion on December 28, 2017. Dkt. 16, at 11. Although Dennis filed a *Knight* petition in May 2016, that petition did not toll the limitations period because it was not "properly filed." *Johnson v. McCaughtry*, 265 F.3d 559, 564 (7th Cir. 2001) (where state court rejects petition as procedurally irregular, petition is not "properly filed"). Dennis did not correct his error until December 28, 2017, when he properly filed his Wis. Stat. § 974.06 motion in the circuit court. By that time, more than two years had elapsed since his conviction became final. So, Dennis's petition is untimely.[1]

---

[1] In light of this conclusion, it is unnecessary to consider respondent's alternative argument

5

Dennis does not dispute this. Dkt. 9. Instead, he asks the court to excuse his untimely filing, either on grounds of equitable tolling or because he is actually innocent.

1. **Equitable tolling**

An untimely petition may be salvaged if grounds exist to equitably toll, or pause, the running of the limitations period. But equitable tolling is an extraordinary remedy that is rarely granted. *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). The Supreme Court has explained that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Petitioners bear the burden of proving that they qualify for equitable tolling. *Taylor v. Michael*, 724 F.3d 806, 810 (7th Cir. 2013).

Dennis argues that he is entitled to equitable tolling for three reasons, none of which is sufficient. First, he says he had to wait seven months, from February to November 2017, for Attorney Ahmad to send him transcripts, which hindered him from filing his Wis. Stat. 974.06 motion. But by February 2017, Dennis's deadline had already expired. What is more, Dennis ultimately raised the same grounds of ineffective assistance of trial counsel in his Wis. Stat. § 974.06 motion that he had raised in his erroneously-filed *Knight* petition some nine months earlier. So the unavailability of the transcripts was not an "extraordinary circumstance" that prevented him from filing a timely postconviction motion.

---

that Dennis procedurally defaulted his claims.

Second, Dennis points to his lack of legal knowledge, asserting that he did the best he could without counsel. But lack of familiarity with the law is not a circumstance that justifies equitable tolling. *Tucker*, 538 F.3d at 735.

Third, Dennis argues that he was unable to promptly file his federal habeas petition after the Wisconsin Supreme Court denied his petition for review of the order denying his postconviction motion because law library access at the prison was limited due to the Covid-19 pandemic. But the three-month delay from March to June 2020 is not the problem. As noted, Dennis's habeas deadline had expired before he even filed his postconviction motion in the circuit court. After that point, it didn't matter how diligently Dennis may have been pursuing his remedies because his deadline had already expired.

In sum, Dennis has not met his burden to show that he qualifies for equitable tolling.

2. **Actual innocence**

A petitioner who fails to qualify for equitable tolling may still avoid application of the statute of limitations based on a credible claim of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To qualify for this narrow exception, a petitioner must persuade the district court "that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S 298, 329 (1995). To succeed on this type of argument, the petitioner "must have 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup*, 513 U.S. at 324)). In assessing the adequacy of petitioner's showing, the court "is not bound by the rules of admissibility that would govern at trial." *Schlup*, 513 U.S. at 327. The court doesn't "make an independent factual determination about what

7

likely occurred," but instead "assess[es] the likely impact of the evidence on reasonable jurors." *House v. Bell*, 547 U.S. 518, 538 (2006) (citing *Schlup*, 513 U.S. at 329). It makes this assessment "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 328 (citation omitted). This standard is a "demanding" one that can be met only in "extraordinary" circumstances. *House*, 547 U.S. at 538.

Dennis's "new" evidence is a report from trial counsel's investigator, documenting his interview of the victim's mother on the first day of trial. Dkt. 9-5. Although the parties treat the report as the new evidence, I will assume that Dennis is relying on the statements made by the victim's mother to the investigator, rather than the report itself. According to the investigator, the victim's mother told him that:

- L. admitted that she had fabricated the sexual assault allegations;

- L. told her that her older sister, I., had put her up to it;

- I. admitted that she had convinced L. to make up the allegations about Dennis, but I. was sticking to her story at trial because she was scared she would get in trouble if she told the truth; and

- L. told her mother that the district attorney had asked L. if there was "anything I can do for you or get you, that you will stay with your original story."

Dkt. 9-5, at 1. In addition to these hearsay statements, the sisters' mother also told the investigator that, in an effort to break up the mother's marriage, I. had previously fabricated allegations that the mother's husband was having an affair, and had also falsely accused the mother of child abuse. According to the mother, this led to the state charging her with felony

8

child abuse, but she "settled the issue" by pleading to a misdemeanor assault and then left the state of Wisconsin. *Id*. at 2.

The state argues that the information contained in the investigator's report is not "new" because the investigator presumably shared this information with Dennis's counsel at trial. But Dennis doesn't need to show that the evidence was "newly discovered," only that it "was not previously considered" by the trier of fact. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015) ("All *Schlup* requires is that the new evidence is reliable and that it was not presented at trial.") (citation omitted). However, some of the information in the report was not "new" because the jury heard it from other sources. Specifically, L. told the jury herself that she had fabricated the allegations and that I. had put her up to it. Further, the jury was certainly aware that the district attorney wanted L. to stay with her original story; that fact was plain from his questioning at trial. Tr., dkt. 25, at 224 (Q: "[I]s there any question that I can ask you today to get you to explain to the jury why you're saying these things now?"). Moreover, if the prosecutor had been pressuring L. not to change her story, it didn't work.

Still, the investigator's report contains some evidence that the jury did not hear, most significantly I.'s supposed admission to her mother that she had convinced L. to make up the allegations about Dennis. The mother's statement, if believed, tends to exonerate Dennis by corroborating L.'s account that the allegations against him were false. But her statements are not the decisive, reliable evidence that Dennis needs to make a credible claim of actual innocence. First, they are hearsay, which is inherently unreliable. *Lee v. Illinois*, 476 U.S. 530, 543 (1986) (Hearsay evidence that "does not fall within a firmly rooted hearsay exception [is] . . . presumptively unreliable[.]") (internal quotation marks omitted)); *see also Schlup*, 513 U.S. at 328 (although actual innocence inquiry is not bounded by "rules of admissibility that would

9

govern at trial," court must give "due regard to any unreliability" of proposed evidence); *Herrera v. Collins*, 506 U.S. 390, 417–18 (1993) (rejecting actual-innocence argument based on affidavits the Court found to be "particularly suspect" in part because, except for one affidavit provided by an individual who was nine years old at the time of the crime, the affidavits consisted of hearsay). Second, the mother's credibility is highly doubtful. At trial, all of the daughters described a childhood that was chaotic and dysfunctional, with the mother at the center. In addition, as the state points out, the mother admitted that she had pled guilty to a misdemeanor charge related to the child abuse that had been reported by I., giving her a potential axe to grind against I. Finally, the evidence at trial indicated that the timing of L.'s recantation coincided with her moving back in with her mother and S., who continued to have a relationship with Dennis. When contrasted with all the evidence presented at trial indicating that L.'s initial account was credible—including L.'s contemporaneous behavior, her consistent accounts to her sisters and the police, I.'s credible testimony, Dennis's false alibi for one of the incidents, and "other acts" evidence strongly suggesting that Dennis was sexually attracted to adolescent girls—the mother's statements fall well short of the "trustworthy eyewitness accounts" or other powerful evidence required to establish that Dennis is actually innocent.

Dennis's new evidence is no stronger than that found by other courts to be insufficient to establish actual innocence. *See Blackmon v. Williams*, 823 F.3d 1088, 1101–02 (7th Cir. 2016) (testimony from two new witnesses that the petitioner was not the shooter was "not enough to meet the demanding *Schlup* standard for actual innocence," even though "no physical evidence tied him to the murder, and the State introduced no evidence of a motive," where two other eyewitnesses had testified that he was the shooter); *Gladney*, 799 F.3d at 899 (new evidence permitting a "possible inference but by no means a required [inference]" of the

10

petitioner's innocence was insufficient to meet his "heavy burden" of showing that "it is likely that no reasonable juror would have convicted"); *Whalen v. Randle,* 37 F. App'x 113, 116, 121 (6th Cir. 2002) (petitioner was "unable to demonstrate that he was actually innocent" even though his evidence included testimony by his alleged codefendant that the petitioner was not an accomplice in the robberies because of "the doubtful credibility of petitioner's accomplice.").

In sum, because the victim's mother's statements do not provide the type of decisive evidence sufficient to show on federal habeas review that it is more likely than not that no reasonable juror would have convicted Dennis, he does not satisfy the actual innocence requirement.

Because this conclusion and the finding that the petition is untimely are not fairly debatable, the court will not issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (for certificate of appealability to issue, petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").

ORDER

IT IS ORDERED that:

1. Respondent's motion to dismiss the petition, Dkt. 15, is GRANTED;

2. Matthew Dennis's petition for a writ of habeas corpus, Dkt. 1, is DISMISSED as untimely;

3. Dennis's motion for the appointment of counsel, Dkt. 21, is DENIED as moot; and

4. Dennis is DENIED a certificate of appealability under 28 U.S.C. § 2253(c)(1).

Entered March 16, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge